```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
UNITED STATES EX REL. DENISE ROMANO,

                     Plaintiff,            00 Civ. 8792 (LLS)
     v.
                                           OPINION AND ORDER
NEW YORK-PRESBYTERIAN HOSPITAL,

                     Defendant.
-----------------------------------------x
```

Defendant New York-Presbyterian Hospital ("NYPH") moves for summary judgment on the legal issue whether the relator can satisfy the "presentment" requirement of the False Claims Act ("FCA"). The FCA states (31 U.S.C. § 3729(a)):

> Any person who:
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
>
>     [or other fraudulent acts immaterial here]
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

Subsection (c) of § 3729 defines a "claim":

> For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

1.

NYPH argues that the submission of claims to Medicaid does not satisfy the FCA's "presentment" requirement: that the false claim "be presented, to an officer or employee of the United States Government . . . for payment or approval." § 3729(a)(1). It says:

> In this case, the claims at issue were not presented by NYPH at all, but rather were presented by an agent of Columbia University to the New York State Medicaid office. Medicaid is a State, not a federal agency, and this "presentment" does not satisfy the Federal FCA requirement.
>
> . . . .
>
> [This] action begs the instant question: were the claims at issue submitted to an officer or employee of the United States? The answer to that question is no because the New York State Medicaid office is a State agency, not a federal one.
>
> . . . .

> . . . NYPH is entitled to judgment as a matter of law because 1) Columbia "presented" the invoices at issue in this case, not NYPH[1]; and 2) the claims at issue were not presented to an officer or employee of the United States as the FCA requires.

Defendant's Motion for Summary Judgment pp. 20-22.

The relevant machinery of the Medicaid claims and payment process is efficiently described in the Statement of Interest submitted by the United States in connection with this motion (pp. 2-4):

> Pursuant to the provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., the Medicaid Program was established in 1965 as a joint federal and state program to provide financial assistance to individuals with low incomes to enable them to receive medical care. Under Medicaid, each state establishes its own eligibility standards, benefit packages, payment rates and program administration in accordance with certain federal statutory and regulatory requirements. The state directly pays the health care providers for services rendered to Medicaid recipients, with the state obtaining its federal share of the Medicaid payment from accounts which draw on the United States Treasury. 42 C.F.R. §§439.0-430.30.
> The New York State Legislature established New York's Medicaid system in 1966, L. 1966, ch. 256, the year after Congress created the federally funded Medicaid program, see Pub. L. 89-97, 79 U.S. Stat 344. Under this system, New York, like all participating states, requests

---

[1] If the assertion that the invoices were presented by Columbia rather than NYPH has any legal merit (in view of the joint relationship between Columbia and NYPH), it involves factual issues which bar summary judgment. See, e.g. this Court's April 6, 2006 Opinion and Order, U.S. ex rel. Romano v. New York Presbyterian, 426 F. Supp. 2d 174 (S.D.N.Y. 2006).

federal monies from the Center for Medicare and Medicaid Services ("CMS") to make payments to health care providers who have sought reimbursement under the Medicaid program.

To facilitate a state's timely payment of a provider's claims, Congress has authorized CMS to make federal funds available to states at the beginning of each quarter based on each state's estimate of the likely total amount of Medicaid claims for that quarter. 42 U.S.C. § 1396b(d)(1); 42 C.F.R. § 430.30(d)(3) & (4); see also 42 C.F.R. § 430.30(a) & (b). Each state must submit its estimate to CMS on a Form CMS-25 before the beginning of the quarter. 42 C.F.R. § 430.30(b). The amount of funds that CMS makes available for a state to use to pay claims during the quarter equals the estimated amount "reduced or increased to the extent of any overpayment of underpayment" that CMS determines was paid to the state in the prior quarter. 42 U.S.C. § 1396b(d)(2)(A). The funds are made available to the state, which draws on these funds through a commercial bank and the Federal Reserve system against a continuing line of credit certified to the Secretary of the Treasury in favor of the state payee. 42 C.F.R. § 430.30(d)(3) & (4).

Significantly, although CMS makes estimated funds available to each state Medicaid agency, the state can draw down on those funds only <u>after</u> the Medicaid claims are submitted to it by healthcare providers. 42 C.F.R. 430.30(d). The funds made available to the state thus remain federal funds, in a Federal Reserve account, until they are drawn by the state and used to pay a provider's previously submitted claim for reimbursement.

After the close of each quarter, a state must submit an accounting of its <u>actual</u> recorded Medicaid expenditures for that quarter; the final disposition of federal funds may not be reported on the basis of estimates. 42 C.F.R. § 430.30(c)(1) & (2). States are required to submit this information on Form CMS-64 entitled a Quarterly Medicaid Statement of Expenditures for Medical Assistance Program. <u>Id.</u> The Form CMS-64 is a statement of expenditures for which states are entitled to Federal reimbursement under Title

> XIX and which reconciles the monetary advance made on the basis of the Form CMS-25 filed previously for the same quarter. If CMS believes that it has overpaid a state based on its review of the a [sic] state's Form CMS-64, or otherwise, CMS may <u>disallow the claims and recover the amount of the overpayment from the state.</u> 42 U.S.C. § 1396b(d)(5); 42 C.F.R. § 433.300 <u>et</u> <u>seq</u>.

(emphasis in the Statement of Interest).

From that account, it appears that the funds used to pay the Medicaid claims at issue were federal funds for the entire period prior to their disbursement, and the remaining question is whether the claims' presentment to Medicaid rather than to an officer or employee of the Government constitutes a violation of subsection (a)(1). That "presentment" issue is immaterial, relator argues, since subsection (a)(2), whose text has no presentment requirement, punishes anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

On the contrary, says NYPH, the "presentment" issue is critical, because the <u>Totten</u> case (discussed below) held that subsection (a)(2) also requires presentment to the Government.

2.

In United States ex rel. Totten v. Bombardier Corp., 380 F.3d 488 (D.C. Cir. 2004), cert. denied, 544 U.S. 1032 (2005) the District of Columbia Circuit held that presentment of a false claim to the Government was a prerequisite for liability under the FCA. The District Court had dismissed the case because the false claims were presented to, and paid by, Amtrak which is not an officer or employee of the United States Government as required by subsection (a)(1) of § 3729. See 380 F.3d at 491. The D.C. Circuit held that nothing in subsection (c)'s definition of a "claim" diminished the requirement in subsection (a)(1) that the claim must be presented to a federal officer or employee. Id. at 492-97. The Circuit Court then addressed subsection (a)(2), which "has no express requirement of presentment to an officer or employee of the United States Government" and had not been considered up to that point in the case. Id. at 497-98. The D.C. Circuit held that in light of the drafting history of the statute and the inclusion of the words "paid or approved by the Government" in subsection (a)(2) (emphasis mine), one should not allow "(a)(2) to swallow (a)(1)" and render the presentment requirement of (a)(1) largely

meaningless, when the main purpose of (a)(2) was to prevent an escape from liability of those who "did not themselves present a claim for payment or approval." Id. at 501 (emphasis in original). Noting doubt whether the funds involved were even "federal monies" (Amtrak paid the claims with proceeds of loans from a Canadian Export Development Corporation and an Export Development Bank, and repaid those loans from its capital budget), the Circuit affirmed dismissal because the claims were presented only to Amtrak, and "Amtrak is not the Government." Id. at 502.

The dissent argued that the phrase "paid by the Government" should be interpreted as requiring that the fraud "must ultimately result in a loss to the government" id. at 506, and challenged the majority's construction of the legislative history and statutory language, id. at 507-15, in ways which allowed "(a)(1) 'to swallow' (a)(2)" id. at 507, and work "a dramatic cutback in the federal government's ability to protect itself against false claims on federal grant money." Id. at 515.

3.

In U.S. ex rel. Sanders v. Allison Engine Corp., 471 F.3d 610 (6th Cir. 2006), cert. granted 128 S. Ct. 491

(2007), the Sixth Circuit rejected Totten's reasoning and conclusion, stating (471 F.3d at 614-15):

> The plain language of the FCA states that actual presentment of a claim to the government is required under one, but not all, of the statute's sections. Only subsection (a)(1) of the statute makes any mention of presenting a claim to the government or Armed Forces. Subsections (a)(2) and (a)(3), which are separate bases for liability, contain no such presentment language. Subsection (a)(2) requires only that a defendant "make[]" or "use[]" a "false record or statement" in order to induce the government to pay or approve a claim. 31 U.S.C. § 3729(a)(2). Subsection (a)(3) requires a conspiracy to defraud the government to pay or allow a false claim. Id. § 3729(a)(3). The definition of "claim" in part (c) further supports the reading that presentment is not required under all sections of the statute. A claim is "any request or demand . . . for money or property which is made to a contractor . . . if the United States provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor . . . for any portion of the money or property which is requested or demanded." Id. § 3729(c) (emphasis added). The focus of this language is on the money paid out by the government in response to a false statement or fraudulent request for payment. There is nothing in this language to suggest the claim must be shown to have been presented to the government, so long as it can be shown that the claim was paid with government funds.
>
> . . . .
>
> Reading a presentment requirement into subsections (a)(2) and (a)(3) is contrary to this purpose and contradicts the plain language of the statute.

After a full review of the FCA's legislative history, a detailed rebuttal of Totten's misconstruction of the two subsections ("Subsections (a)(1) and (a)(2) reach two distinct types of conduct, and there is no support for a reading of subsection (a)(2) . . . that imposes a presentation requirement in the absence of statutory language that would compel such a result", id. at 617, n.4), the purpose of the FCA, and other authorities, the Sixth Circuit concluded (id. at 622):

> The plain language of the statute, the legislative history, and the decisions of the Supreme Court and other courts lead us to conclude that the district court and the Totten court erred in reading a presentment requirement into all subsections of the False Claims Act. We hold that while liability under § 3729(a)(1) turns on whether a claim has been presented to the government, subsections (a)(2) and (a)(3) do not require such a showing. Rather, a relator under these two subsections must show that government money was used to pay the false or fraudulent claim. This requirement comports with the policy rationale behind the FCA—protecting the government fisc—while ensuring that the statute applies only to claims submitted to the government and not to private entities.

4.

Relator alleges that NYPH assisted and caused Columbia to create and use false patient charts and records to get fraudulent claims paid by the Government through the

Medicaid program. The Sixth Circuit states the better rule: that such conduct violates § 3729(a)(2), which punishes any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." There is no "presentment" requirement preventing liability from being imposed under § 3729(a)(2).

## Conclusion

Defendant's motion for summary judgment on the presentment issue is denied.

So ordered.

Dated: New York, New York
April 2, 2008

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.